KENNETH E. KELLER (SBN 71450) kkeller@ksrh.com
CHRISTOPHER E. STRETCH (SBN 166752) cstretch@ksrh.com
KELLER, SLOAN & ROMAN LLP
555 Montgomery Street, 17th Floor
San Francisco, CA  94111
Telephone:   (415) 249-8330
Facsimile:    (415) 249-8333

Attorneys for Defendants and Counter-Claimants
EARL M. RAUCH (aka EARL MAC RAUCH);
WALTER D. RICHTER

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MGM TELEVISION ENTERTAINMENT INC., ORION PICTURES CORPORATION, PFE LIBRARY ACQUISITION COMPANY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>EARL M. RAUCH (aka EARL MAC RAUCH); WALTER D. RICHTER,<br><br>Defendants. | Case No. 2:16-cv-08775 TJH-KSx<br><br>**[CORRECTED] DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS; DEMAND FOR JURY TRIAL** |
| EARL M. RAUCH (aka EARL MAC RAUCH); and WALTER D. RICHTER,<br><br>Counter-Claimants,<br><br>v.<br><br>MGM TELEVISION | |

1

1
2
3
4
5

ENTERTAINMENT INC., ORION
PICTURES CORPORATION, PFE
LIBRARY ACQUISITION COMPANY
INC.,

Counter-Defendants

6       Defendants and Counter-Claimants Earl M. Rauch (aka Earl Mac Rauch)

7  ("Rauch") and Walter D. Richter ("Richter")(collectively where appropriate

8  "Defendants") respond to Plaintiffs MGM Television Entertainment Inc., Orion

9  Pictures Corporation, and PFE Library Acquisition Company, Inc., ("Plaintiffs")

10  complaint and further counter-claim as follow:

11                              **ANSWER**

12       1.     As to Paragraph 1, Defendants deny the allegations contained therein.

13       2.     As to Paragraph 2, Defendants admit that there is a controversy between

14  Plaintiffs and Defendants regarding the ownership of the intellectual property rights in

15  and to the world of BUCKAROO BANZAI, including but not limited to the

16  characters, plots, themes, dialogue, mood, settings, pace, sequence of events and other

17  protected elements therein and various copyrights and except for that admission,

18  Defendants deny the allegations of Paragraph 2 and further deny Plaintiffs' definition

19  of *Buckaroo Banzai* as globally encompassing the world of Buckaroo Banzai.

20       3.     As to Paragraph 3, on information and belief, Defendants admit that

21  MGM Television is located at 245 N. Beverly Drive, Beverly Hills, CA 90210, but

22  lack sufficient information or belief to admit or deny the remainder of this Paragraph

23  and on that basis denies the remaining allegations contained therein.

24       4.     As to Paragraph 4, on information and belief, Defendants admit that

25  Orion Pictures is located at 245 N. Beverly Drive, Beverly Hills, CA 90210, but lack

26  sufficient information or belief to admit or deny the remainder of this Paragraph and

27  on that basis denies the remaining allegations contained therein.

28

2

5.      As to Paragraph 5, on information and belief, Defendants admit that PFE Library Acquisition Company is located at 245 N. Beverly Drive, Beverly Hills, CA 90210, but lack sufficient information or belief to admit or deny the remainder of this Paragraph and on that basis denies the remaining allegations contained therein.

6.      As to Paragraph 6, Defendants admit that Defendant Earl M. Rauch is currently domiciled in the State of Texas and that Rauch was hired to write a screenplay for the motion picture that was titled *The Adventures of Buckaroo Banzai Across the 8th Dimension* but Defendants deny each and every remaining allegation of Paragraph 6.

7.      As to Paragraph 7, Defendants admit that Defendant Walter Richter is currently domiciled in the State of Vermont and that he directed the motion picture titled *The Adventures of Buckaroo Banzai Across the 8th Dimension* but Defendants deny each and every remaining allegation of Paragraph 7.

8.      As to Paragraph 8, Defendants do not contest the jurisdictional allegations contained therein.

9.      As to Paragraph 9, Defendants deny the allegations contained therein.

10.      As to Paragraph 10, Defendants admit that venue is proper in this District but deny that Plaintiffs have suffered any injury as a result of the Defendants acts or otherwise, and further deny the remaining allegations contained therein.

11.      As to Paragraph 11, Defendants admit the allegations of Paragraph 11 to the extent they generally describe the movie titled *The Adventures of Buckaroo Banzai Across the 8th Dimension* but Defendants deny the specific allegations of Paragraph 11.

12.      As to Paragraph 12, Defendants admit that Rauch wrote the screenplay for the movie titled *The Adventures of Buckaroo Banzai Across the 8th Dimension* but Defendants deny the remaining allegations of Paragraph 12.

a.      As to Paragraph 12(a), Defendants admit that Exhibit 1 to the

3

complaint appears to be a copy of a Memorandum of Agreement, dated April 9, 1981, but deny the remainder of the allegations of Paragraph 12(a).

b.　　As to Paragraph 12(b), Defendants admit that Exhibit 2 to the Complaint appears to be a copy of an agreement dated April 9, 1981, but deny the remainder of the allegations of Paragraph 12(b).

c.　　As to Paragraph 12 (c), Defendants admit that Rauch signed an "Agreement of Writer" on or about September 9, 1981but deny the remainder of the allegations of Paragraph 12(c).

d.　　The complaint omits Paragraph 12(d), so no response is required of Defendants.

e.　　As to Paragraph 12(e), the Defendants admit that the Standard Terms contain Paragraph 7 but deny the remainder of the allegations of Paragraph 12(e) and further deny that the "work" of Paragraph 7 of the Standard Terms was intended, understood or does cover anything beyond the screenplay that Rauch was hired to write.

f.　　As to Paragraph 12(f), the Defendants admit that the Standard Terms contain Paragraph S (7) but deny the remainder of the allegations of Paragraph 12(f) and further deny the "work" of Paragraph 7 of the Standard Terms was intended, understood or does cover anything beyond the screenplay that Rauch was hired to write.

g.　　As to Paragraph 12 (g), Defendants admit that Rauch signed a "Certificate of Authorship," a copy of which appears to be attached to the Complaint as Exhibit 3, but deny the remaining allegations of Paragraph 12(g).

4

13.     As to Paragraph 13, Defendants admit that Defendant Walter D. Richter directed the 1984 motion picture titled *The Adventures of Buckaroo Banzai Across the 8th Dimension* and entered into certain agreements in connection therewith, but deny the remaining allegations of Paragraph 13.

        a.     As to Paragraph 13(a), Defendants admit that Exhibit 4 to the complaint appears to be a copy of a memorandum of agreement, dated April 10, 1981, but deny the remainder of the allegations of Paragraph 13(a).

        b.     As to Paragraph 13(b), Defendants admit that Exhibit 5to the Complaint appears to be a copy of a Director Contract—Loanout (Principal Agreement) but deny the remainder of the allegations of Paragraph 13(b).

        c.     As to Paragraph 13 (c), Defendants admit that the Standard Terms contain Paragraph A(1) deny the remainder of the allegations of Paragraph 13(c).

        d.     As to Paragraph 13(d), Defendants admit that the Standard Terms contain Paragraph A(1) deny the remainder of the allegations of Paragraph 13(d).

        e.     As to Paragraph 13(e), Defendants admit that the Standard Terms contain Paragraph A(2) but deny the remainder of the allegations of Paragraph 13(e).

        f.     The complaint contains a second Paragraph 13(e) and with respect to the second Paragraph 13(e), Defendants admits that the Standard Terms contain Paragraph S(6) but deny the remainder of the allegations of Paragraph 13(e).

        g.     As to Paragraph 13(f), Defendants admit that the Standard Terms contain Paragraph S(7) but deny the remainder of the allegations of

5

Paragraph 13(f).

     h.     As to Paragraph 13 (g), Defendants admit that Richter served as co-Producer of the movie titled *The Adventures of Buckaroo Banzai Across the 8th Dimension* and signed a memorandum of agreement dated April 10, 1981, a copy of which appears to be attached to the complaint as Exhibit 6,, but deny the remaining allegations of Paragraph 13(g).

     i.     As to Paragraph 13 (h), Defendants admit that a copy of a Producer Contract-Loanout (Principal Agreement) appears to be attached to the complaint as Exhibit 7, but deny the remaining allegations of Paragraph 13(h).

14.     Defendants lack sufficient information or belief to admit or deny the allegations of Paragraph 14, and on that basis deny the allegations contained in Paragraph 14.

15.     Defendants lack sufficient information or belief to admit or deny the allegations of Paragraph 15, and on that basis deny the allegations contained in Paragraph 15.

16.     Defendants lack sufficient information or belief to admit or deny the allegations of Paragraph 16, and on that basis deny the allegations contained in Paragraph 16.

17.     Defendants lack sufficient information or belief to admit or deny the allegations of Paragraph 17, and on that basis deny the allegations contained in Paragraph 17.

18.     Defendants lack sufficient information or belief to admit or deny the allegations of Paragraph 18, and on that basis deny the allegations contained in Paragraph 18.

19.     As to Paragraph 19, Defendants deny the allegations contained therein.

6

20.     As to Paragraph 20, Defendants admit that they were generally aware in 2008 that certain of the Plaintiffs were considering pursuing a television series based on "Buckaroo Banzai" but deny each and every remaining allegation of Paragraph 20.

21.     As to Paragraph 21, on information and belief, Defendants admit that in or about August 2011, Mark Lichtman communicated with certain of the Plaintiffs but Defendants deny that Mark Lichtman was acting as Defendants' agent or representative at that time and further deny the remaining allegations of Paragraph 21.

22.     As to Paragraph 22, on information and belief Defendants admit that their counsel communicated with Plaintiffs' counsel on or about September 13, 2106 but deny the remaining allegations of Paragraph 22.

23.     As to Paragraph 23, on information and belief, Defendants admit that Mark Lichtman contacted certain of Plaintiffs on or about July 25, 2016 but Defendants deny that Mark Lichtman was acting as Defendants' agent or representative at that time and further deny the remaining allegations of Paragraph 23.

24.     As to Paragraph 24, on information and belief, Defendants admit the allegations contained therein.

25.     As to Paragraph 25, on information and belief, Defendants admit that their counsel communicated with Plaintiffs' counsel on or about August 3, 2016 but deny the remaining allegations of Paragraph 25.

26.     As to Paragraph 26, on information and belief, Defendants admit that there were communications between Plaintiffs' counsel and Defendants counsel on or about August 10-11, 2016 but deny the remaining allegations of Paragraph 26.

27.     As to Paragraph 27, on information and belief, Defendants admit that there were communications were communications between Plaintiffs' counsel and Defendants counsel on or about August 12, 2016 but deny the remaining allegations of Paragraph 27.

28.     As to Paragraph 28, on information and belief, Defendants admit that

7

there were communications were communications between Plaintiffs' counsel and Defendants counsel on or about August 18, 2016 but deny the remaining allegations of Paragraph 28.

29.     As to Paragraph 29, Defendants admit the allegations contained therein.

30.     As to Paragraph 30, Defendants admit that Defendants counsel communicated with Plaintiffs' counsel on September 13, 2016 which communication is quoted in part in Paragraph 30 but deny the remaining allegations of Paragraph 30.

31.     As to Paragraph 31, Defendants deny the allegations contained therein.

32.     As to Paragraph 32, Defendants admit that Richter gave an interview to "Film Buff Online" on or about October 4, 2016 and that certain statements are quoted in Paragraph 32, but deny that any such statement are or were false and further deny the remaining allegations of Paragraph 32.

33.     As to Paragraph 33, Defendants admit that they made certain statements on the Banzai Institute Facebook website page on or about October 13, 2016 but deny that any such statements were false and further deny the remaining allegations of Paragraph 33.

34.     As to Paragraph 34, Defendants deny the allegations contained therein.

## COUNT I

## (DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP)

35.     As to Paragraph 35, Defendants reallege their responses to Paragraphs 1-34 as set forth herein.

36.     As to Paragraph 36, Defendants admit that there is a controversy between Plaintiffs and Defendants but deny the remaining allegations of Paragraph 36.

37.     As to Paragraph 37, Defendants deny the allegations contained therein.

38.     As to Paragraph 38, Defendants deny the allegations contained therein.

/ / /

/ / /

8

## <u>COUNT II</u>

### (DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP)

39.     As to Paragraph 39, Defendants reallege their responses to Paragraphs 1-34 as set forth herein.

40.     As to Paragraph 40, Defendants admit that there is a controversy between Plaintiffs and Defendants but deny the remaining allegations of Paragraph 40.

41.     As to Paragraph 41, Defendants deny the allegations contained therein.

42.     As to Paragraph 42, Defendants deny the allegations contained therein.

43.     As to Paragraph 43, Defendants deny the allegations contained therein.

44.     As to Paragraph 44, Defendants deny the allegations contained therein

45.     As to Paragraph 45, Defendants deny the allegations contained therein.

## <u>COUNT III</u>

### (DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP)

46.     Defendants reallege their responses to Paragraphs 1-34 as set forth herein.

47.     As to Paragraph 47, Defendants admit that there is a controversy between Plaintiffs and Defendants but deny the remaining allegations of Paragraph 47

48.     As to Paragraph 48, Defendants admit that they have asserted that Plaintiffs do not own the copyrights to the world of Buckaroo Banzai but deny the remaining allegations of Paragraph 48.

49.     As to Paragraph 49, Defendants deny the allegations contained therein.

50.     As to Paragraph 50, Defendants deny the allegations contained therein.

51.     As to Paragraph 43, Defendants deny the allegations contained therein Defendants deny the allegations of Paragraph 51.

52.     As to Paragraph 43, Defendants deny the allegations contained therein Defendants deny the allegations of Paragraph 52.

53.     As to Paragraph 43, Defendants deny the allegations contained therein

9

1  Defendants deny the allegations of Paragraph 53.

2      54.    As to Paragraph 43, Defendants deny the allegations contained therein

3  Defendants deny the allegations of Paragraph 54.

4                          <u>COUNT IV</u>

5          **(DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP)**

6      55.    As Paragraph 55, Defendants reallege their responses to Paragraphs 1-34

7  as set forth herein.

8      56.    As to Paragraph 56, Defendants deny the allegations contained therein.

9      57.    As to Paragraph 57, Defendants deny the allegations contained therein.

10     58.    As to Paragraph 58, Defendants deny the allegations contained therein.

11     59.    As to Paragraph 59, Defendants deny the allegations contained therein.

12                          <u>COUNT V</u>

13         **(DECLARATORY JUDGMENT OF COPYRIGHT OWNERSHIP)**

14     60.    As Paragraph 60, Defendants reallege their responses to Paragraphs 1-34

15 as set forth herein.

16     61.    As to Paragraph 61, Defendants deny the allegations contained therein.

17     62.    As to Paragraph 62, Defendants deny the allegations contained therein.

18     63.    As to Paragraph 63, Defendants deny the allegations contained therein.

19     64.    As to Paragraph 64, Defendants deny the allegations contained therein.

20             **<u>RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF</u>**

21     Defendants deny that Plaintiffs are entitled to any and all relief sought in their

22 Complaint, and/or any other relief.

23                    **<u>AFFIRMATIVE DEFENSES</u>**

24     In further response to the Complaint, Defendants assert the following defenses.

25                    **<u>First Affirmative Defense</u>**

26                      **(Waiver and/or Estoppel)**

27     Plaintiffs' Complaint is barred in whole or in part based on the doctrine of

28

10

waiver and/or estoppel.

## Second Affirmative Defense

### (Unclean Hands)

Plaintiffs' Complaint is barred in whole or in part based on the doctrine of unclean hands.

## Third Affirmative Defense

### (Copyright Infringement)

Plaintiffs' Complaint is barred in whole or in part because Plaintiffs have infringed upon the Defendants copyrights.

## Fourth Affirmative Defense

### (Laches)

Plaintiffs' complaint is barred by the doctrine of laches.

## Fifth Affirmative Defense

### (Copyright Misuse)

Plaintiffs' complaint is barred by the doctrine of copyright misuse.

## Sixth Affirmative Defense

### (Acquiescence)

Plaintiffs' complaint is barred by the doctrine of acquiescence.

## Seventh Affirmative Defense

### (Implied Consent)

Plaintiffs' complaint is barred by the doctrine of implied consent.

Defendants reserve the right to amend their Answer with additional defenses as further information is determined.

## PRAYER FOR RELIEF AS TO COMPLAINT

WHEREFORE, Defendants respectfully pray for the entry of judgment as follows:

A.     That the Complaint be dismissed with prejudice in its entirety;

11

B.      That Plaintiffs take nothing as a result of the Complaint;

C.      That Plaintiffs be denied any other relief including, but not limited to, any claim for declaratory relief;

D.      That Defendants be awarded their reasonable attorneys' fees in an amount to be determined at trial, all costs of suit herein incurred, and pre- and post-judgment interest as provided by law; and

E.      That any such further relief as deemed just and proper by the Court, or that Defendants may be entitled as a matter of law or equity, be awarded.

## COUNTERCLAIMS

For its counterclaim against counter-defendants, MGM Television Entertainment Inc., Orion Pictures Corporation, PFE Library Acquisition Company, Inc. ("Counter-defendants"), Counterclaimants Earl M. Rauch ("Rauch") and Walter D. Richter ("Richter") (collectively where appropriate "Counter-claimants") allege as follows:

## PARTIES

1.      Counter-Claimant Earl M. Rauch ("Rauch") is the creator of the world of Buckaroo Banzai ("BUCKAROO BANZAI") and its characters, themes, plots, stories, dialogue, mood, settings, pace, sequence of events and other protected elements and the copyrights alleged herein.  BUCKAROO BANZAI, its' world and all of its protected elements were created, protected and/or registered by Rauch long before April 1, 1981.

2.      Counter-Claimant Walter D. Richter ("Richter") was involved in the development of certain aspects and elements of BUCKAROO BANZAI and Counter-Claimants jointly and separately own the intellectual property rights in and to the word of Buckaroo Banzai, and its characters, themes, plots, stories, dialogue, mood, settings, pace, sequence of events and other protected elements, and the copyrights alleged herein.

3.      Counter-Defendant MGM Television Entertainment Inc. ("MGM") is a Delaware corporation with its principal place of business at 245 N. Beverly Dr., Beverly Hills, CA  90210.

4.      Counter-Defendant Orion Pictures Corporation ( "Orion") is a Delaware corporation with its principal place of business at 245 N. Beverly Dr., Beverly Hills, CA 90210. Orion Pictures Corporation is an indirect, wholly-owned subsidiary of MGM Holdings Inc.

5.      Counter-Defendant PFE Library Acquisition Company, Inc. ("PFE") is a Delaware corporation with its principal place of business at 245 N. Beverly Dr., Beverly Hills, CA 90210.  PFE Library Acquisition Company, Inc. is an indirect, wholly-owned subsidiary of Orion Pictures Corporation.

6.      Counterclaimants are informed and believes, and on that basis allege, that during all times mentioned herein, each of the Counter-Defendants was the duly authorized agent, servant or representative of each other Counter-Defendant and was acting at all times both on its own behalf and on behalf and within the course and scope of its agency or representative capacity, with the knowledge and consent of the other Counter-Defendant.

## NATURE OF THE ACTION

7.      In late summer of 1973, Rauch pitched to Richter— then a principal of Harry Bailly Productions, Inc.— an original story idea for a series of interlocking, but stand-alone, episodic adventures featuring a multi-talented country-western singer and jet-car driver then named "Buckaroo Bandy."

8.      On September 27, 1973, Harry Bailly Productions entered into a one-year option agreement with Rauch for a serio comic screenplay entitled "JET CAR" that he was to write based upon a single episode from his own proposed Buckaroo Bandy series.

9.      When Rauch began to write "JET CAR", he retiled it "THE STRANGE

13

CASE OF MISTER CIGARS: A BUCKAROO BANDY MYSTERY." At this point, he introduced several key elements of what would become the world of Buckaroo Banzai. The proposed plot line for this episode was to be Buckaroo's race to defeat Mister Cigars before that villain assassinated dozens of world leaders with exploding cigars at a global conference.

10.    Rauch immediately began to work on a second Buckaroo episode, what would become a complete 57-page treatment for a proposed screenplay entitled "LEPERS FROM SATURN — A BUCKAROO BANZAI ADVENTURE." In this treatment, Rauch changed Buckaroo's surname from "Bandy" to "Banzai," and continued to introduce elements of his world.

11.    Having finished the treatment for "LEPERS FROM SATURN — A BUCKAROO BANZAI ADVENTURE", Rauch at once began work on a third original script embodying a different episode that he called "A BUCKAROO BANZAI THRILLER — 'FIND THE JET CAR,' SAID THE PRESIDENT." Here Rauch introduced more details about his complex fictional world and its heroes, Buckaroo Banzai and the Hong Kong Cavaliers.

12.    Rauch then set aside this episode after completing 67 pages of the screenplay and turned his attention to yet another individual episode in his proposed series of BUCKAROO BANZAI adventures, beginning work on a fourth screenplay entitled "SHIELDS AGAINST THE DEVIL — A BUCKAROO BANZAI THRILLER." He completed this 109-page screenplay in 1975.

13.    In "SHIELDS AGAINST THE DEVIL", Rauch continued to introduce elements and characters. Rauch changed the name of "The Shields" to "Knights of The Blue Shield" (precursors of "The Blue Blaze Irregulars" who appear in subsequent episodes).

14.    Two major plots are entwined in the episode entitled "SHIELDS AGAINST THE DEVIL," one concerning a gigantic weaponized robot steered by

crude gears, levers, and sophisticated computers being operated by villains from a cockpit in its head. This King-Kong-like robot is owned by a vicious cartel that Buckaroo has battled before, "The World Crime League," whose headquarters is a "Fascist Fortress … a super-secret hideout in an unknown Asian land" and whose "sinister members" are "like a criminal United Nations," their "reigning chairman" in this episode "the semi-Oriental villain, HOT FAT FROM SINGAPORE."

15.    This first narrative thread in "SHIELDS AGAINST THE DEVIL" concerns America's race to finish the prototype Jet Car before The World Crime League, who has stolen all its plans, builds one of its own and uses it for evil purposes. The melodrama plays out against a second interwoven plot as Buckaroo figures out that Adolf Hitler did not die in a Berlin bunker, but escaped disguised as a woman and is now possibly hiding in a forbidding Ecuadorian jungle populated by gigantic, hairy humans.  In a short prose piece at the conclusion of "SHIELDS AGAINST THE DEVIL," Mr. Rauch laid out plans for his next Buckaroo episode, "FORBIDDEN VALLEY", and set his hero off for Ecuador in the Jet Car, heading toward that mysterious, remote jungle locale in search of Adolf Hitler.

16.    These five stories written and created by Rauch—(1) "THE STRANGE CASE OF MISTER CIGARS:  A BUCKAROO BANDY MYSTERY," (2) "LEPERS FROM SATURN — A BUCKAROO BANZAI ADVENTURE," (3) "A BUCKAROO BANZAI THRILLER — 'FIND THE JET CAR,' SAID THE PRESIDENT," (4) "SHIELDS AGAINST THE DEVIL — A BUCKAROO BANZAI THRILLER," and (5) "FORBIDDEN VALLEY"— are all discreet episodes from Rauch 's original serialized story idea and were written by Mr. Rauch between 1973 and 1975.  As such, Rauch owns and registered the copyrights to each of these individual written works as well as to the overarching world of Buckaroo Banzai, the characters, themes, plots, stories, dialogue, mood, settings, pace, sequence of events and other protected elements (the "Buckaroo Banzai Copyrights") and these

15

1    copyrights are in full force and effect today.

2        17.    In 1981, Richter formed an independent production company, Atlantic

3    Films with producer Neil Canton, and Richter provided Canton with over 200 pages

4    of the Buckaroo Banzai saga — the screenplays and prose that Mr. Rauch wrote

5    between1973 and 1975. Mr. Canton loved the elaborate Buckaroo Banzai story idea,

6    likening the property's concept to the distinct, separate adventures of the Indiana

7    Jones series.

8        18.    On March 25, 1981, Richter and Canton sent a bound volume of

9    Buckaroo Banzai material that they called "A Buckaroo Banzai Sampler" to producer

10   Sydney Beckerman.  The next day, on March 26, 1981, Canton and Richter met with

11   Sydney Beckerman, who had by then read the sampler. Mr. Beckerman told Mr.

12   Canton and Mr. Richter that he thought the material might be perfect for David

13   Begelman, then head of MGM.

14       19.    On March 27, 1981, Messrs. Beckerman, Canton, and Richter met with

15   Mr. Begelman at MGM and pitched to him the entirety of Mr. Rauch's "The

16   Adventures of Buckaroo Banzai," leaving with him a copy of "A Buckaroo Banzai

17   Sampler."

18       20.    Their pitch to Begelman and MGM was not a typical single-story-idea

19   pitch, but rather a detailed presentation of a larger, wholly original, multi-episode

20   idea: "The Adventures of Buckaroo Banzai." Five episodes of that proposed series, as

21   noted, already existed in written form and were included in "A Buckaroo Banzai

22   Sampler" which was left with Mr. David Begelman for his consideration.

23       21.    The very next day, Begelman told Beckerman that MGM was not

24   interested in acquiring or developing Mr. Rauch's larger property and only wanted to

25   hire Mr. Rauch to write a screenplay based upon only a single episode from "The

26   Adventures of Buckaroo Banzai." Specifically, Mr. Begelman had chosen from the

27   five episodes in the "Sampler", to make Rauch an offer to write a screenplay based

28

16

upon the single episode "LEPERS FROM SATURN — A BUCKAROO BANZAI ADVENTURE."  Counter-Defendants' predecessors thus specifically passed on acquiring any rights in any of Rauch's larger intellectual property rights, which included the five specific episodes he had copyrighted and Rauch did not transfer, assign or convey to Counter-Defendants any rights in the overall world of BUCKAROO BANZAI, or its characters, themes, plots, stories, dialogue, mood, settings, pace, sequence of events and other protected elements, or any copyrights which Counter-Claimants owned therein, including the Buckaroo Banzai Copyrights.

22.    All that Counter-Defendants' predecessors acquired was  memorialized in an April 9, 1981 agreement, which specifically provides for Counter-Defendants' predecessor in interest to "borrow" Rauch as a writer-for-hire from his personal holding company, Johnny B. Good Inc., to write a screenplay and two revisions based on a single episode he had previously referenced in the Agreement as the "Property." No other rights of any kinds were granted to Counter-Defendants' predecessors in interest to the underlying rights which Rauch owned in World of BUCKAROO BANZAI, or its characters, themes, plots, stories, dialogue, mood, settings, pace, sequence of events and other protected elements.

23.    The "work" which Rauch was specifically hired to write pursuant to this agreement, and related agreements was only this screenplay based upon only one of Rauch's original stories from the world of Buckaroo Banzai, which he previously created.

24.    Rauch entered into the "Writer's Deal Contract-Standard Terms", which specifically defined:

    a.    "Item of Work": Any of the various items which writer is <u>engaged to write</u> … such as treatment, revised treatment, first draft screenplay, etc. (emphasis added)

    b.    "Work": the material which the writer <u>is engaged to write</u>

17

(emphasis added)

25.     Paragraph 4 of the Standard Terms provides

    a.     "During each respective writing period, the writer <u>shall write the respective work</u>… (emphasis added).

26.     When Counter-Defendants' predecessors in interest acquired the rights to the film, which became entitled the Adventures of *Buckaroo Banzai across the 8th Dimension*, the only rights which Counter –Defendants could and did acquire were those granted to Counter-Defendants' predecessor in interest which specifically did not include any rights to the world of Buckaroo Banzai, and its characters, themes, other plots, other stories, dialogue, mood, settings, pace, sequence of events and other protected elements, or the Buckaroo Banzai.

27.     As a result of various machinations by Begelman, the "rights" to the motion picture for which Rauch was writing the screenplay, changed hand on several occasions, passing through, among others, the merged companies of MGM and United Artist, Sherwood Productions, Gladden Entertainment, Credit Lyonnais Bank-Netherlands, Polygram Filmed Entertainment, Seagrams Universal and finally back to MGM, who in 1998 purchased a library of film titles, including the film *The Adventures of Buckaroo Banzai Across the 8th Dimension*.

28.     Counter-Claimants are informed and believe and thereon allege that in 2008, however, attorneys for Warner Bros. Animation (who at the time were considering partnering with MGM on a Buckaroo Banzai animated television series) concluded that Counter-Defendants did not even have a clear and clean chain of title to the rights in the motion picture entitled *The Adventures of Buckaroo Banzai Across the 8th Dimension* and Warner Bros.  Animation withdrew from this proposed joint project and MGM never pursued it further.

29.     Counter-Claimants own all the rights in and to the world of Buckaroo Banzai, and its characters, themes, other plots, other stories, ,dialogue, mood, settings,

18

pace, sequence of events and other protected elements, including but not limited to the copyrights in the documented episodes from that world, described above, and the Buckaroo Banzai Copyrights and these copyrights are in full force and effect.

30. In or about July, 2106, Counter-Claimants learned that Counter-Defendants were developing a television series based upon, incorporating and misusing their intellectual property rights and protected copyrights without the approval or consent of Counter-Claimants. In that regard, Counter-Defendants were asserting, without justification, that they owned all the rights in and to the world of Buckaroo Banzai and its characters, themes, other plots, other stories, ,dialogue, mood, settings, pace, sequence of events and other protected elements in connection with a proposed television series based upon and misusing Counter-Defendants intellectual property, including the Buckaroo Banzai Copyrights.

31. Counter-Claimants are informed and believe and thereon allege that Counter-Defendants knew or should have known of Counter-Claimants intellectual property rights, including their ownership of the Buckaroo Banzai Copyrights.

32. In that regard, on or about July 27, 2017, Counter-Claimants advised Counter-Defendants of their intellectual property rights in and to the world of Buckaroo Banzai and its characters, themes, other plots, other stories, ,dialogue, mood, settings, pace, sequence of events and other protected elements, including the Buckaroo Banzai Copyrights.

33. Thereafter, Counter-Defendants denied that Counter-Claimants owned any rights in and to the world of Buckaroo Banzai and its characters, themes, other plots, other stories, ,dialogue, mood, settings, pace, sequence of events and other protected elements, including but not limited to copyrights and instead asserted that they owned and controlled all such rights.

34. Therefore, a controversy exists between Counter-Defendants and Counter Claimants as to the ownership of the rights in and to the world of Buckaroo Banzai

19

and its characters, themes, other plots, other stories, ,dialogue, mood, settings, pace, sequence of events and other protected elements, including but not limited to copyrights.

35.    As a result of the actions of Counter-Defendants, they are and unless enjoined will continue to infringe upon the Counter-Claimants copyrights.

36.    As a result of Counter-Defendants' misconduct, Counter-Claimants have suffered and will continue to suffer monetary or economic damage or harm.

## JURISDICTION AND VENUE

37.    Jurisdiction of this action is premised upon 15 U.S.C. § 1121, 17 U.S.C. § 101 et seq., and 28 U.S.C. §§1331, 1332(a)(1), 1338(a) and 1338(b).  The amount in controversy as alleged herein exceeds $75,000, the jurisdictional limit of this Court.

38.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Counter-defendants principal place of business is in this district, Counter-defendants conducts business within this District, and a substantial part of the events or omissions given rise to the claim occurred within this District

## COUNT I
## (DECLARATORY JUDGMENT FOR
## COPYRIGHT OWNERSHIP AGAINST ALL DEFENDANTS)

39.    Counter-Claimants incorporate by reference each and every allegation set forth in Paragraphs 1-33.

40.    An actual and justiciable controversy exists between the parties as to the ownership of the copyrights at issue herein and whether Counter-Claimants have a right to prevent the production by Counter-Defendants of the television series described herein as well as any ancillary rights in connection therewith.

41.    Counter-Claimants are entitled to a declaratory judgment, pursuant to U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57 that they are the legal owners of the copyrights alleged herein, with the full right, title and interest to

20

assert those copyrights against Counter-Defendants in connection with their production of the television series described herein and with respect to any other improper use of Counter-Claimants' copyrights.

42.  Counter-Claimants are entitled to their attorney's fees and full costs, including under 17 U.S. C. §505.

# COUNT II

## (COPYRIGHT INFRINGEMENT 17 U.S.C. §101, *et. seq.*)
## (AGAINST ALL DEFENDANTS)

43.  Counter-Claimants incorporate by reference each and every allegation set forth in Paragraphs 1-37.

44.  At all times relevant herein, Counter-Claimants have been the owners of the all of the intellectual property rights in and to the world of Buckaroo Banzai and its characters, themes, other plots, other stories, ,dialogue, mood, settings, pace, sequence of events and other protected elements, including but not limited the Buckaroo Banzai Copyrights.

45.  Counter-defendants had access to Counter-Claimants intellectual property in and to the world of Buckaroo Banzai and its characters, themes, other plots, other stories, dialogue, mood, settings, pace, sequence of events and other protected elements, including but not limited the Buckaroo Banzai Copyrights.

46.  In its creation, production, marketing, and advertising of the television series described herein, Counter-Defendants have copied the protectable elements of Counter-Claimants' intellectual property rights in and to the world of Buckaroo Banzai and its characters, themes, other plots, other stories, ,dialogue, mood, settings, pace, sequence of events and other protected elements, including but not limited the Buckaroo Banzai Copyrights.

47.  Counter-Defendants' conduct infringes Counter-Claimants Buckaroo Banzai Copyright under the Copyright Act, as amended, 17 U.S.C. § 101 *et seq.* and

1    particularly § 501(a) thereof.

2        48.     Counter-Defendants' misconduct has harmed Counter-Claimants,

3 including but not limited to causing lost profits and goodwill, monetary damage, and

4 damage to their reputation, in an amount to be ascertained at the time of trial and

5 exceeding $75,000.

6        49.     Counter-Claimants are entitled to recover its actual damages from

7 Counter-Defendants, and Counter-Defendants' profits under 17 U.S.C. § 504.

8 Alternatively, Counter-Claimants may elect statutory damages under 17 U.S.C. §

9 504(c).  In addition, Counter-Defendants' willful use of Counter-Claimants Buckaroo

10 Banzai Copyrights constitutes willful infringement pursuant to 17 U.S.C. § 504(c).

11        50.     Counter-Claimants are also entitled to its full costs and its reasonable

12 attorney's fees under 17 U.S.C. § 505.

13 **PRAYER FOR RELIEF**

14       WHEREFORE, Counter-Claimants demand judgment jointly and severally

15 against the Counter-Defendants as follows:

16      1.      On Count I, a declaration that Counter-Claimants own all exclusive rights

17            to the intellectual property rights in and to the world of Buckaroo Banzai

18            and its characters, themes, other plots, other stories, dialogue, mood,

19            settings, pace, sequence of events and other protected elements, including

20            but not limited the Buckaroo Banzai Copyrights;

21      2.      On Counts I & II, an order for permanent injunction enjoining Counter-

22            Defendants, their owners, members, partners, officers, agents,

23            representatives, servants, employees, distributors, licensees, corporate

24            affiliates, successors and assigns, parents, subsidiaries, divisions, and all

25            those acting in concert, privity, and/or participation therewith, from

26            directly and/or indirectly infringing upon the Counter-Claimants

27            intellectual property rights in and to the world of Buckaroo Banzai and its

28

22

---

characters, themes, other plots, other stories, ,dialogue, mood, settings, pace, sequence of events and other protected elements, including but not limited the Buckaroo Banzai Copyrights;

3.  On Count II, an award of Counter-Claimants actual damages and Counter-Defendants' profits under 17 U.S.C. § 504, in an amount to be determined at trial;

4.  On Count II, alternatively, an award of statutory damages, at Counter-Claimants election, under 17 U.S.C. § 504(c);

5.  On Count II, An award of Counter-Claimants allowable costs and reasonable attorney's fees under 17 U.S.C. § 505;

6.  On Count II, an award of Counter-Claimants actual damages, Counter-Defendants' profits, and Counter-Claimants allowable  costs of suit under 15 U.S.C. § 1117(a), in an amount to be determined at trial;

7.  On Count II, an award of three times the amount of Counter-Claimants' actual damages and its reasonable attorneys' fees under 15 U.S.C. § 1117(a);

8.  On Count II, an award of compensatory damages as allowed by law;

9.  On Counts I & II, an award of allowable costs as provided by law;

10. On Counts' I & II, an award of Counter-Claimants' reasonable attorney's fees; and

11. On Counts I & II, all such further relief as the Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

23

1  Dated:  March 15, 2017                    KELLER, SLOAN & ROMAN LLP

2

3                                       By:      _____/S/ Kenneth E. Keller_____
                                         KENNETH E. KELLER
4                                        Attorneys for Defendants and
                                         Counter-Claimants EARL M. RAUCH
5                                        (aka EARL MAC RAUCH) and
                                         WALTER D. RICHTER
6

7

8                          **<u>DEMAND FOR JURY TRIAL</u>**

9          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, demand is

10  hereby made for trial by jury on all issues trial to a jury.

11

12  Dated:  March 15, 2017                    KELLER, SLOAN & ROMAN LLP

13

14                                      By:      _____/S/ Kenneth E. Keller_____
                                         KENNETH E. KELLER
15                                       Attorneys for Defendants and
                                         Counter-Claimants EARL M. RAUCH
16                                       (aka EARL MAC RAUCH) and
                                         WALTER D. RICHTER
17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' ANSWER TO COMPLAINT and COUNTER-CLAIMS
Case No. 14-cv-03162 BLF/HRL